```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   IN RE CUSTOMS AND TAX
     ADMINISTRATION OF THE KINGDOM
 4   OF DENMARK
     (SKATTEFORVALTNINGEN) TAX
 5   REFUND SCHEME LITIGATION,
                                              18 MD 2865 (LAK)
 6
                                              Conference
 7
     ------------------------------x
 8                                            New York, N.Y.
                                              March 28, 2024
 9                                            2:20 p.m.

10   Before:

11                      HON. LEWIS A. KAPLAN,

12                                            District Judge

13                           APPEARANCES

14   HUGHES HUBBARD & REED LLP
          Attorneys for Plaintiff SKAT
15   BY:  WILLIAM R. MAGUIRE
          NEIL J. OXFORD
16
     KOSTELANETZ & FINK, LLP
17        Attorneys for Defendants Azalea Pension Plan, et al.
     BY:  SHARON McCARTHY
18
     WILMER CUTLER PICKERING HALE AND DORR LLP
19        Attorneys for Defendants Avanix Management LLC, et al.
     BY:  PETER G. NEIMAN
20        ANDREW SCOTT DULBERG

21   KATTEN MUCHIN ROSENMAN LLP
          Attorneys for Defendants Robert Klugman and
22        RAK Investment Trust
     BY:  DAVID GOLDBERG
23        MICHAEL M. ROSENSAFT

24

25
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

APPEARANCES (cont'd)

DEWEY PEGNO & KRAMARSKY LLP
    Attorneys for Defendant Michael Ben-Jacob
BY:  THOMAS E.L. DEWEY
     -and-
KEKER VAN NEST & PETERS LLP
BY:  ELLIOT R. PETERS

K&L GATES LLP
    Attorneys for Defendants American Investment Group of New
    York, L.P. Pension Plan, Stacey Kaminer, Robert Crema.
    Acer Investment
BY:  JOHN C. BLESSINGTON

1        (Case called)

2        THE COURT:  Folks, I've pretty much made up my mind
3   what we are going to do.  But if anybody wants five minutes to
4   address that issue in terms of what we are going to try first,
5   I'll entertain it.

6        Suspense is killing all of you.

7        We are going to go with SKAT's modified trial 1
8   proposal.  We are going to try the Markowitzes, the
9   Merkensteijns, Mr. Klugman, and, subject to one contingency,
10  Mr. Ben-Jacob on January 7.

11       Does that work for everybody?

12       I have also looked carefully at the proposed schedule
13  for pretrial proceedings.  I am going to make some changes.
14  For one thing, my goal is not to maximize the paperwork, which
15  it appears may have entered into this inadvertently or
16  otherwise.  I will start the schedule where you proposed to
17  start it.  I will compress it some.  And you should have an
18  order on that earlier next week.

19       Anything else we can usefully accomplish while we are
20  all here?

21       Any chance of getting these cases settled?  Where are
22  we?

23       MR. MAGUIRE:  If it please the Court, Bill Maguire for
24  the plaintiff SKAT.

25       Your Honor, the door is always open to SKAT in terms

1  of settlement.  We have settled a number of cases.

2              In terms of the SKAT proposed trial 1 that your Honor
3  is scheduling for January 7, there is no active settlement
4  discussions going on with respect to those defendants right
5  now.

6              THE COURT:  Might be time, folks.  Might be time.
7              Ms. McCarthy.

8              MS. McCARTHY:  Your Honor, just a quick question.
9  Your Honor, when you say you may compress the schedule, does
10 that mean you may eliminate some of our things or -- yes?

11             THE COURT:  Modify or eliminate.

12             This schedule is very -- you probably won't agree with
13 this characterization, but very considerate of the attorneys'
14 needs and, although it was not designed with malice or
15 forethought, very unmindful of the fact that and my two law
16 clerks do all the work at my end, and there is not enough time
17 for me to do my work on this schedule.  I am very well aware of
18 what I am going to have to do in this case, so I am going to
19 compress your time and expand mine.

20             MS. McCARTHY:  Understood.  I was wondering if you are
21 going to eliminate any of the things we want to make motions
22 about.  Because, if so, we would want to be heard.

23             THE COURT:  I have not reached a final determination
24 on that.

25             But the first thing that struck me has to do with the

1   severance motion.  If somebody wants to make that motion, I am
2   not going to stop you, but it is going to accomplish -- in all
3   likelihood, barring unforeseen circumstances or knowledge I
4   don't yet have, it's not likely to be terribly fruitful.
5               MS. McCARTHY:  Understood, your Honor.
6               THE COURT:  Wouldn't be the first case with
7   defendants' positions in a multidefendant case being tried
8   together.  It just wouldn't.  And it's manageable, I think.
9               MS. McCARTHY:  The one thing, your Honor, I just
10  wanted to bring to the Court's attention, I am sure the Court
11  has been -- maybe not.  But the Court may be aware that
12  Mr. Shah is on trial right now in Denmark and --
13              THE COURT:  To say the least.
14              MS. McCARTHY:  He has testified and responded to the
15  questions by SKAT.
16              Previous to his arrival in Denmark he had been in
17  Dubai which, as your Honor may know, is not a contracting party
18  to the Hague Convention, so we had no opportunity then to seek
19  his deposition when he was in Dubai.  The parties would very
20  much like to consider whether or not to try to seek his
21  deposition between now and trial, given the changed
22  circumstances and the fact that he is speaking and has answered
23  questions, so appears not to be resting on his rights not to do
24  that.
25              Unfortunately, right now it's our understanding there

is no transcript of his testimony. We were just getting bits and pieces from press reports. But it would help us to determine whether or not we want to try to do that, and we understand we'd have to do it very quickly. If SKAT is able to provide any sort of summary that's been created about his testimony, that would be very useful to us.

THE COURT: I am not going to stop you right here and now. I want the case to move, but I'm not blind to the possible significance of testimony from Mr. Shah. I am a little puzzled about whether there is going to be a transcript, even if there isn't one at this moment and, if there were, how that might help or affect what we have to do here. I just wonder how the Danish courts deal with appeals and the like if they don't have a transcript. I know nothing about Danish procedure.

MS. McCARTHY: We will speak with counsel for the plaintiff to see if there is some way we can get a better sense of what he said on the witness stand other than what's in the press reports, and that would be, I think, helpful to our decision as a strategic matter whether or not we will seek the deposition.

THE COURT: Sure. Demonstrating my utter ignorance about Danish law, other than the one or two little pieces you have put in front of me over and over again, it's a similar law currently, right? So the questioning is not done by counsel,

1  or is it?  Is it done by a judge?
2            MS. McCARTHY:  I think we would do the questioning,
3  your Honor.
4            THE COURT:  No.  I'm talking about the Danish
5  proceedings that are going on now.
6            MS. McCARTHY:  The Danish proceedings -- counsel for
7  SKAT, I understand, has been asking the questions?  No.  To not
8  you guys, but the people that are in Denmark.  No.  Prosecutor.
9  Sorry.
10           THE COURT:  Prosecutor.  It's a criminal case in
11 Denmark.
12           Now I know 5 percent more than I knew before.
13           MS. McCARTHY:  Sorry about that.
14           THE COURT:  Danish procedure.
15           Anything else that I should know?
16           MR. NEIMAN:  Your Honor, there is one issue that's
17 listed in the letter that you got from plaintiffs' counsel that
18 they noted was open, which has to do with whether there are
19 going to be kind of preliminary instructions to the jury on
20 some of the key legal issues so that the jury has some
21 framework for deciding and understanding the facts that are
22 being presented to them.  We think that would be pretty useful
23 for the jury and, frankly, pretty useful for the parties to
24 know how those kind of key legal issues are going to get
25 resolved before we present our evidence.

1           THE COURT:  I wouldn't be at all surprised, but I am
2    not ready to grapple with that right now.
3           You all ought to be very much aware that I will take a
4    special verdict in this case.  And what I always tell my law
5    clerks is the very first thing you ought to do is think the
6    case through beginning to end and draft the verdict form and
7    then start thinking about what the instructions look like.  I
8    commend that to all of you.  It would be highly desirable to
9    have an agreed verdict form in this case.
10          MR. NEIMAN:  We will work with plaintiffs to see if we
11   can agree on that.
12          THE COURT:  If there is nothing else, thank you all
13   for coming down, and this too will end.
14          (Adjourned)